Charles J. Slack-Mendez, (SBN 014894)
Breann Elizabeth Slack (SBN 035996)
**SLACK-MENDEZ LAW FIRM**
2710 South Rural Road
Tempe, Arizona 85282
Emails: Charles@SlackMendez.com
        Breann@SlackMendez.com
Telephone: 480.829.1166
Facsimile:   480.829.4938

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wendell Cautrell, individually and on behalf of the statutory beneficiaries of Samuel James Cautrell; and Personal Representative of the Estate of Samuel James Cautrell, <br><br> Plaintiffs, <br><br> vs. <br><br> City of Nogales, a municipal entity; Officer Manuel Stimans, in his individual and official capacity; Carlos Jimenez, Nogales Police Chief, in his individual and official capacity; Doe Entities I-X; and Roes I-X, <br><br> Defendants. | Case No: <br><br> **COMPLAINT** <br><br> **(Wrongful Death; 42 U.S.C. §1983 and §1988)** <br><br> (Jury Trial Demanded) |

**COMES NOW** the Plaintiffs, Wendell Cautrell, in his individual capacity and on behalf of the statutory beneficiaries of Samuel James Cautrell and in his capacity as the Personal Representative of the Estate of Samuel James Cautrell, by and through counsel undersigned for their Complaint against the Defendants as follows:

## INTRODUCTION

1. Plaintiffs bring this action pursuant to 42 USC § 1983 and § 1988 for violations of the Fourth and Fourteenth Amendment to the United States Constitution and under the law of the State of Arizona, against: City of Nogales, Arizona, Officer Manuel Stimans (hereinafter "Defendant Stimans"), individually, and in his official

capacity as a police officer with the City of Nogales Police Department, and Carlos Jimenez, individually and in his official capacity as Nogales Police Chief.

2. On December 5, 2024, Defendant Stimans shot and killed Samuel James Cautrell (hereinafter "Samuel"), in Nogales, Arizona. Defendant Stimans killed Samuel by shooting him twice in the head after a brief public interaction with Samuel.

**JURISDICTION AND VENUE**

3. This action arises under the Civil Rights Act, 42 U.S.C. § 1983 to redress the deprivation, under color of authority of federal and state law, of rights secured by the Constitution of the United States.

4. This Court has jurisdiction pursuant to 28 U.S.C § 1331and 28 U.S.C. §1343(a).

5. This Court has supplemental jurisdiction of Plaintiffs' state law causes of action pursuant to 28 U.S.C. § 1367(c).

6. The acts complained herein of occurred in Nogales, Santa Cruz County, State of Arizona. Defendants reside in Arizona. Thus, venue is proper in the District Court of Arizona pursuant to 28 U.S.C. § 1391(b).

7. Plaintiffs served Defendants with a Notice of Claim pursuant to A.R.S. § 12-821.01. The Notice of Claim complied in all ways with the statute, was timely served, which is deemed denied by operation of statute.

**PARTIES**

8. Samuel was, at the time of his death on December 5, 2024, an individual located in Nogales, Santa Cruz County, Arizona.

9. Plaintiff Wendell Cautrell is the natural father of Samuel, and is therefore a statutory plaintiff and beneficiary pursuant to A.R.S. § 12-612(A), *et seq.*

10. Diana Cautrell, also known as Diana 'Dugenia', Diana 'Hasse', or Diana 'McAneney', is the natural mother of Samuel and is therefore a statutory plaintiff and beneficiary pursuant to A.R.S. § 12-612(A), *et seq.*

11. Plaintiff Wendell Cautrell also brings this claim in his capacity as the Personal Representative of the Estate of Samuel James Cautrell.

12. Defendant Stimans, at all relevant times, was a police officer with the City of Nogales Police Department and was acting under color of law.

13. Defendant City of Nogales including all of its departments, subdivisions, agencies, agents, and employees, is a public entity, formed and designated as such pursuant to Title 11 of the Arizona Revised Statutes. The City may be held both independently liable or otherwise responsible for the wrongful conduct of its, agents, officers, employees, districts and divisions/subdivisions, including (without limitation) members of the Nogales Police Department (hereinafter "NPD"), as permitted by federal and state law.

14. All married defendants acted for and on behalf of the marital communities to which they belong. Accordingly, those marital communities are vicariously liable for the acts and omissions of the married Defendants as alleged herein.

15. Defendant Carlos Jimenez is the Nogales Police Department Chief and at all relevant times was acting under color of law.

16. At all times relevant hereto, all named and unnamed Defendants, including Defendant Stimans, acted under color of state law.

17. Defendant Stimans was an agent, representative, and employee of City of Nogales, who, at the time of the events complained of herein, was acting within the course and scope of his employment and under color of law. Defendant Stimans is sued both in his official capacity, for purposes of Plaintiffs' state law claims, and in his individual capacity, for purposes of Plaintiffs' claims under 42 U.S.C. § 1983.

18. Plaintiffs hereby demand a trial by jury in this matter.

## FACTUAL BACKGROUND

19. On December 5, 2024, at approximately 12:37 p.m. Defendant Stimans was driving northbound on North West Avenue within the city limits of Nogales, Arizona.

20. On the same date and at the same time, Samuel was in the area of the northwest corner of North Western Avenue and Goodman Street.

21. Defendant Stimans observed Samuel and parked his patrol vehicle.

22. Defendant Stimans approached Samuel and conducted a field interview whom he reported he believed met the physical description of an Attempt to Locate ("ATL") provided to patrol units.

23. Defendant Stimans reported he positioned himself approximately four feet from the Samuel and requested Samuel wait with him until other officers responded to the scene.

24. Defendant Stimans reported that the purpose for conducting the field interview with Samuel was regarding a burglary that occurred earlier that day.

25. Samuel complied with Defendant Stimans' request and stayed.

26. Samuel was questioned by Defendant Stimans about whether he was carrying any weapons as they were waiting for officers to arrive.

27. In compliance, Samuel informed Defendant Stimans that he was carrying a knife in his pocket.

28. Samuel complied when Defendant Stimans requested Samuel to remove the knife from his pocket.

29. Defendant Stimans escalated the interaction with Samuel by removing his on-duty firearm from his holster and pointed it at Samuel.

30. According Defendant Stimans, he was close enough to Samuel that he could reach out and touch him.

31. Within seconds, Defendant Stimans shot Samuel in the head twice with his department issued firearm.

32. It is unclear how exactly the events unfolded prior to Defendant Stimans shooting Samuel as Defendant Stimans was not wearing a body camera.

33. Upon information and belief, Defendant Stimans had his on duty taser and baton with him throughout the interaction.

34. Defendant Stimans fell backwards after shooting two rounds at Samuel, struggling to get back up.

///

35. Defendant Stimans continued to point his firearm at Samuel after Samuel had fatally collapsed on the roadway face down.
36. Sergeant O. Mesta of the NPD was one of the first law enforcement personnel to arrive to the scene.
37. Pursuant to Sergeant O. Mesta's supplemental report, he observed Defendant Stimans standing in the roadway with his department issued firearm pointed at Samuel who was on the ground.
38. Immediately upon arrival, Sergeant Mesta escorted Defendant Stimans to his patrol unit.
39. Samuel was not evaluated until other NPD officers Jose Pimienta and A. Calvillo arrived.
40. Nogales Fire Department arrived to provide aid and Captain Jose Higuera was able to find a pulse on Samuel.
41. Samuel was transported to Holy Cross Hospital and was pronounced deceased at 13:17 hours.
42. An autopsy was performed by Dr. David Winston at the Pima Medical Examiner's Office in Tucson, Arizona.
43. According to Dr. David Winston, Samuel had two significant injuries, having a bullet entrance on the right side of his head and an exit wound on the back of his neck and a significant laceration to Samuel's forehead.
44. Samuel did not consume alcohol or substances, which is supported by his toxicology report which concluded no illicit substances were found in Samuel's blood.
45. Samuel had no criminal record and no record of violent behavior.
46. Samuel was a veteran who bravely served our country.
47. Samuel's cause of death is ascribed to gunshot wound of the head and manner of death is homicide.
48. NPD officers do not possess body worn cameras.

5

49. All the events happened less than two (2) minutes of Defendant Stimans advising via radio that he was out with a suspect of a possible ATL.
50. Defendant Stimans failed to use less than lethal methods prior to shooting Samuel.
51. Defendant Stimans did not provide clear verbal commands.
52. Defendant Stimans had the opportunity to deescalate the situation before resulting in deadly gunfire.
53. Defendant Stimans did not take any measures to deescalate the situation.
54. The Fourth Amendment to the United States Constitution protects citizens against unreasonable seizure by agents of the United States.
55. By shooting, and killing Samuel, Defendant Stimans violated Samuel's Constitutional rights.
56. This action is brought against Defendant Stimans for violating Samuel's federal constitutional rights against unreasonable seizure of his person and against unreasonable and excessive force. Plaintiffs seek compensatory and punitive damages against Defendant Stimans.
57. This action is also brought against Defendants City of Nogales and Nogales Police Chief Carlos Jimenez and its other agents and employees, for negligent training and supervision of Defendant Stimans. Plaintiff seeks compensatory damages against Defendants are vicariously liable for acts and omissions of Defendant Stimans, and the compensatory and punitive damages to be awarded. Plaintiffs seek compensatory and punitive damages against Defendants for setting forth a policy that resulted in the deprivation of the Plaintiffs' Constitutional rights.

**COUNT ONE**
**Assault/Battery Resulting in Wrongful Death**
**(Against Defendant Stimans and Vicarious Liability Against Defendants City of Nogales and Nogales Police Chief Carlos Jimenez)**

58. Under Arizona law, when death of a person is caused by an intentional tort, the persons who would have been liable if death had not ensued, shall be liable in an action for damages.

59. By shooting Samuel, Defendant Stimans committed the intentional tort of battery and/or assault.
60. Defendant Stimans' conduct amounted to battery because of the desire to cause a harmful and offensive contact with Samuel with the reasonable belief battery was the likely consequence.
61. Defendants City of Nogales and Nogales Police Chief Carlos Jimenez are vicariously liable for Defendant Stimans' acts and/or omissions, as he was in the course and scope of his duties as an officer of the NPD, as set forth herein and in such other ways as may be discovered during litigation.
62. Defendant Stimans had a pattern of escalating interactions with the public in his capacity as an NPD officer.
63. Defendant Stimans had a known pattern of utilizing unjustified and/or unreasonable excessive force.
64. Formal and informal complaints were made regarding Defendant Stimans escalating interactions with the public and utilizing unjustified and/or unreasonable excessive force.
65. Defendants City of Nogales and Nogales Police Chief Carlos Jimenez has direct knowledge of information, record, documentation of Defendant Stimans' conduct described herein.
66. Defendants City of Nogales and Nogales Police Chief Carlos Jimenez knew of the propensity of Defendant Stimans' conduct pattern described herein.
67. Defendants City of Nogales and Nogales Police Chief Carlos Jimenez are therefore vicariously liable for Defendant Stimans' conduct.
68. The battery described herein was the direct, proximate, and legal cause of Samuel's death.
69. Wendall Cautrell, and the wrongful death statutory beneficiaries, are entitled to damages pursuant to A.R.S. § 12-611, et seq, including but not limited to burial costs, funeral costs, medical expenses, and loss of consortium.

**COUNT TWO**
**Negligent Supervision and Training**
**(Against Defendants City of Nogales and Nogales Chief of Police Carlos Jimenez)**

70. Defendants are independently liable for its negligent training and supervision of Defendant Stimans.

71. Defendants had a duty to hire, train, and supervise all employees, including Defendant Stimans.

72. Defendants had a duty to promulgate rules and regulations that would protect individuals of the public, such as those similar to Samuel Cautrell.

73. Defendants had a duty to properly train and supervise Defendant Stimans in his interactions with the public, including with Samuel.

74. Defendants had a duty to properly train and supervise Defendant Stimans in deescalating interactions with the public, including with Samuel.

75. Defendants had a duty to properly train and supervise Defendant Stimans to utilize less than lethal force.

76. Defendants had a duty to properly train and supervise Defendant Stimans to convey proper and appropriate commands pursuant to interactions with the public.

77. Defendants breached their duty of care aforementioned by their acts of negligence including negligent supervision and negligent training.

78. As a direct and proximate cause of Defendants' negligence, Samuel lost his life.

79. Defendants' negligence caused and continues to cause damages Plaintiffs including but not limited to expenses arising from decedent Samuel's death including burial costs, funeral costs, and loss of companionship in an amount to be proven at trial.

**COUNT THREE**
**Unreasonable Use of Force—4th Amendment**
**42 U.S.C. § 1983**
**(Against Defendant Stimans)**

80. The 4th Amendment to the United States Constitution protects citizens against the unreasonable use of force.

/ / /

8

81. The foregoing law was well-established long before Defendant Stimans encountered Samuel James Cautrell.

82. At all relevant times, Defendant Stimans was a city (Nogales) actor in carrying out his enforcement activities as an individual under color of authority. Defendant Stimans is bound by oath, law, and duty not to violate or deprive any person of their civil rights pursuant to 42 U.S.C. §1983, the Constitution of the United States or violate any other laws.

83. Defendant Stimans used excessive force against Samuel when Defendant Stimans shot at Samuel's head twice. Defendant Stimans' unjustified shooting deprived Samuel of his right to secure his person against unreasonable searches and seizures as guaranteed under the Fourth Fourteenth Amendment of the United States Constitution. At the time Defendant Stimans began firing his weapon, Samuel was not committing any crime or engaged in illegal activity.

84. When Defendant Stimans interacted with Samuel, there was no evidence as to whether Samuel posed a threat of death or significant bodily harm to others.

85. Seconds prior to shooting, Samuel complied with Defendant Stimans' commands to remove any weapons from his person.

86. Defendant Stimans gave no warning to Samuel that he was going to fire his service weapon.

87. Defendant Stimans' shooting of Samuel was entirely unjustified and constituted an unreasonable seizure and excessive use of force against Samuel, causing him to lose his life.

88. The reckless, intentional and/or deliberate acts and omissions of Defendant Stimans were the direct and legal cause of the deprivation Plaintiffs' constitutionally protected rights under Fourth Amendment of the United States Constitution and the Fourteenth Amendment, violating 42 U.S.C. § 1983.

///

///

89. The acts and omissions of Defendant Stimans were taken knowingly, intentionally, and/or maliciously and for the purpose of harassment, oppression, and infliction of injury upon Plaintiffs in reckless, wanton, and callous disregard of their civil rights.

90. As a result of Defendant Stimans' conduct as alleged herein, Plaintiffs suffered damages including Samuel's pre-death pain and suffering, expenses arising from decedent Samuel's death including burial costs, funeral costs, medical expenses, deprivation of companionship and society, as well as pain, grief, sorrow, anguish, stress shock and mental suffering, loss of economic support, and loss of household services in an amount to be proven at trial.

91. Defendant Stimans' acts were willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**COUNT FOUR**
**Municipal Liability**
**42 U.S.C. § 1983**
**(Against Defendants City of Nogales and Nogales Chief of Police Carlos Jimenez)**

92. Defendants are the final policy makers of for the NPD and therefore are liable under 42 U.S.C. §1983 for unconstitutional policies, procedures, and/or customs.

93. A governmental entity may be directly liable for its own acts where: (1) there is an official policy depriving a claimant of his rights, (2) there is a pervasive practice or custom depriving a claimant of his rights, (3) there is a failure to train, supervise, or discipline, or (4) by the decision or act of a policymaker. *Horton by Horton*, 915 F.3d 592, 602-603 (9th Cir. 2019) (*citing Monell v Dep't of Soc. Servs.*, 436 U.S. 658, 693-695 (1978)).

94. On or about December 5, 2024, (and continuing to the present day) Defendants are public entities and municipal corporations, duly organized and existing under and by Arizona law. Defendants, through their policymakers, deprived Plaintiffs of their rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution against unreasonable excessive use

of force, unreasonable seizure, familial association, and deprivation of liberty interests by maintaining and enforcing customs, policies and practices of (1) failing to train, supervise, and discipline retaining personnel who are predisposed to deny individuals their constitutional rights and (2) permitting, condoning, and ratifying constitutional violations by its agents, employees and representatives.

95. Defendants knew, or in the exercise of reasonable care, should have known, of a history, propensity and pattern, prior to the time of Samuel's fatal shooting, of NPD officers and other employees including but not limited to Defendant Stimans, of their officers (1) using unreasonable excessive force, (2) using unreasonable police tactics which lead to the unnecessary and unreasonable use of excessive force, (3) failure to provide proper commands, and (4) failure to deescalate interactions with the public.

96. Defendants have a custom, practice, and policy which rejects and ignores the prior misconduct of its employees whereby Defendants failed to properly train, discipline, supervise, and assess their officers, resulting in the continuous retention of officers such as Defendant Stimans, who have a propensity to use excessive force, fail to provide proper commands, and fail to deescalate interactions with the pubic. This consequentially condoned, ratified, promoted and perpetuated NPD officers' misconduct and code of silence which was a moving force in the violations of Plaintiffs' constitutional rights.

97. Defendants acting in accord with these customs, practices, and policies were a moving force and legal cause of Plaintiffs' injuries and acted with deliberate indifference to the needs of persons such as Decedent Samuel. Defendants' conduct caused Samuel to suffer grievous harm, pain and suffering, and cruel and unusual punishment.

98. Despite its knowledge and notice, Defendants were deliberately and callously indifferent to the constitutional rights of those that they serve in training (and/or failing to adequately train) its police personnel in (among other things) the

       appropriate, lawful and constitutional policies, procedures, practices, protocols, and customs for the use of force in recurring circumstances police face, as alleged herein.

99. Defendants' deliberate, reckless, and callous actions, as described above, substantially contributed to and/or was the moving force behind Defendant Stimans' use of excessive deadly force upon Samuel.

100. On and before December 5, 2024, (and continuing to the present day) Defendants failed to properly train, assign, supervise, and guide NPD officers, including Defendant Stimans, as to de-escalation, proper management confrontations with citizens, properly assess encounters with citizens, utilize proper use of force, and adequate use of less lethal force.

101. Years leading up to Samuel's death, the NPD had maintained a longstanding practice or custom of needlessly escalating interactions with members of the public who were non-violent, posed no imminent threat to the general public, suspected only of minor offenses, and/or whose behavior suggested they may be experiencing a mental health crisis. The NPD appears to have developed a habit of reflexively relying on excessive force when confronted with such non-violent situations:

    a. In 2008, an unarmed 60-year-old Hilda Bojorquez was physically assaulted and tased three times by NPD officers while visiting her daughter at the hospital, requesting hospital staff explain her daughter's medical diagnosis. The suspected offense was misdemeanor trespassing and disorderly conduct.

    b. In 2012, an unarmed Diego Lerma was disoriented in a restricted employee-only section of La Cinderlla store moments after experiencing an epileptic seizure. Despite multiple eyewitnesses reporting to police Mr. Lerma appeared harmless and required medical attention, NPD officer Jose Pimienta tased Mr. Lerma five times for suspected trespassing.

///

    c. In 2019, unarmed Luis Contreras attracted police attention when peacefully sitting at an IHOP restaurant for an extended period of time. Without provocation, NPD officers tased Mr. Contreras twice, took him to the ground, and beat him for the suspected offense of trespassing.

    d. In April 2023 NPD officers shot and killed 31-year-old Edrei Toledo Ochoa, alleging he had brandished two knives, while demonstrating mental/emotional health issues.

    e. In May 2021, eight NPD officers fatally shot Glen Ray Cockru, Jr.

    f. In 2020, NPD officers illegally entered a residence regarding a noise complaint. Upon entrance, NPD officers excessively tased unarmed Miguel Esparza and continued to viciously beat him with a baton.

102. Upon information and belief, command staff of NPD prior to December 5, 2024, were aware of these described incidences, as well as other examples, where line officers resorted to excessive force when confronted with nonviolent individuals.

103. On and before to December 5, 2024 (and continuing to the present day) Defendants deprived Plaintiffs of the rights and liberties secured by the Fourth and Fourteenth Amendment to the United States Constitution, in that Defendants and their supervising and managerial employees, agents, and representatives, acting with reckless and deliberate indifference to the rights and liberties of Plaintiffs and of the persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied a widespread practice by failing to ensure through training, supervision, and discipline by:

    a. Failing to train, supervise, instruct, discipline and ensure officers deescalate confrontations with the public, which includes but is not limited to employing verbal communication techniques during confrontations, attempts to create physical distance from agitated individuals, seek assistance from crisis intervention specialists, refrain from use of aggressive

body language toward citizens, and properly assess and listen to citizens' concerns during tense interactions.

b. Failing to train, supervise, instruct, discipline and ensure officers adequately assess encounters with citizens including but not limited to conducting preliminary risk assessments, evaluate environmental factors affecting safety, consider subject's medical, mental, and emotional conditions, properly document critical observations, and implement threat assessment procedures.

c. Failing to train, supervise, instruct, discipline and ensure officers utilize proper force including but not limited to refraining from the application of using deadly physical force without exhausting proper verbal options, refraining from the application of using deadly physical force without utilizing non-lethal force, refrain from use of higher levels of force than justified by circumstances, reassess need for force during encounters, provide clear verbal warnings before force application, and refrain from ignoring less intrusive alternatives to physical control.

104. The violation of constitutional rights, such as those violated against Plaintiffs, is a highly predictable consequence and moving force of Defendants' failure to equip law enforcement officers with specific tools to handle recurring situations, including proper training, supervision, and discipline.

105. Defendants, as the final policy makers, had either actual or constructive notice of the deficient policies, practices, and customs alleged herein. Despite such knowledge, Defendants condoned, tolerated, and through actions and inactions thereby ratified such policies. Defendants acted with deliberate indifference to the foreseeable effects and consequences with respect to the constitutional rights of Plaintiffs.

106. By perpetuating, sanctioning, tolerating, and ratifying outrageous conduct and other wrongful acts, Defendants acted with an intentional, reckless, and callous

disregard for the well-being of Plaintiff decedent and his constitutional human rights.

107. Said acts and omissions, customs and practices by Defendants, set in motion a series of conduct by their subordinates, including Defendant Stimans, that they knew or reasonably should have known would cause the deprivation of Plaintiffs of their rights as alleged herein and have caused the damages and injuries alleged herein.

108. Upon information and belief, in December 2024 Defendants maintained a policy and/or unwritten custom of allowing its officers to resort to excessive force when faced with nonviolent individuals who otherwise pose no imminent threat to officers, to civilians, or to the general public. This custom and practice is evidenced, among other things, by examples cited in this Complaint of instances where NPD officers used excessive force on individuals who were suspected of – at most – nonviolent misdemeanor offenses.

109. Defendants' deliberate, reckless, and callous actions, as described herein, substantially contributed to and/or was the moving force behind Defendant Stimans' use of excessive deadly force upon Samuel.

110. The wrongful conduct of Defendants, as described herein, constitutes violations of 42 U.S.C. § 1983, in that with deliberate and callous indifference, Defendants deprived Samuel the right to be free from law enforcement's excessive use of force, right of life and liberty, render medical aid, familial association, and unreasonable seizure and Plaintiffs' rights secured to them by the Constitution and laws of the United States, including (among others and without limitation) their right to the continued familial and societal relationship with Samuel, as guaranteed by the Fourteenth Amendment.

111. As a result of Defendant Stimans' conduct as alleged herein, Samuel was killed, and Plaintiffs suffered damages including Samuel's pre-death pain and suffering, expenses arising from decedent Samuel's death including burial costs, funeral costs,

1 | medical expenses, deprivation of companionship and society, as well as pain, grief, sorrow, anguish, stress shock and mental suffering, loss of economic support, and loss of household services in an amount to be proven at trial.

112. The wrongful conduct of Defendants was in reckless disregard of the rights of Plaintiffs and punitive damages in an amount to be determined by a jury should be awarded to deter and prevent others from acting in a similar manner in the future.

## COUNT FIVE
**Supervisor Liability**
**42 U.S.C. §1983**
**(Against Defendant Nogales Chief of Police Carlos Jimenez)**

113. Defendant Carlos Jimenez is responsible for the supervision of NPD employees, including Defendant Stimans.

114. Upon information and belief, Defendant Carlos Jimenez reviews complaints, concerns, and reports regarding NPD officer's conduct pursuant to their interaction with the public, including Defendant Stimans.

115. Upon information and belief, Defendant Carlos Jimenez reviewed complaints, concerns, and reports regarding Defendant Stimans' use of unreasonable and/or unjustified excessive force; escalation of confrontations with citizens; and failure to deescalate confrontations with the public.

116. Upon information and belief, despite such knowledge Defendant Carlos Jimenez failed to initiate any effective disciplinary action against or training for Defendant Stimans prior to the death of decedent Samuel.

117. Defendant Carlos Jimenez' failure to initiate any effective disciplinary action against and training described herein resulted in in the federally protected constitutional violations of Plaintiffs in that with deliberate and callous indifference, deprived Samuel the right to be free from law enforcement's excessive use of force, right of life and liberty, familial association, and unreasonable seizure and Plaintiffs' rights secured to them by the Constitution and laws of the United States, including

1  (among others and without limitation) their right to the continued familial and societal relationship with Samuel, as guaranteed by the Fourteenth Amendment.

118. As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have suffered damages, including decedent Samuel Cautrell's pre-death pain and suffering expenses arising from decedent Samuel's death including burial costs, funeral costs, medical expenses, deprivation of companionship and society, as well as pain, grief, sorrow, anguish, stress shock and mental suffering, loss of economic support, and loss of household services in an amount to be proven at trial.

119. The wrongful conduct of Defendant was in reckless disregard of the rights of Plaintiffs and punitive damages in an amount to be determined by a jury should be awarded to deter and prevent others from acting in a similar manner in the future.

## COUNT SIX
### Liberty Interest in Familial Association—14th Amendment
### 42 U.S.C. § 1983
### (Against Defendants)

120. The Plaintiffs' reallege and incorporate by reference all previous allegations.

121. The Fourteenth Amendment to the United States Constitution prohibits state actors from interfering with familial relationships, including father.

122. By his conduct as alleged herein—killing Samuel by excessive deadly force, Defendant Stimans has forever stopped Wendell Cautrell and Samuel's father/son relationship, and Diana Cautrell and Samuel's mother/son relationship, whom have a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of their child, sometimes referred to as a protected liberty interest in familial association.

123. As a result of Defendant Stimans' conduct, Wendell Cautrell and Diane Cautrell have suffered damages.

124. Defendant Stimans firing his weapon was not a legitimate law enforcement activity related to arrest, self-protection, or protection of the public and was unrelated to legitimate law enforcement objectives.

17

125. After clearly injuring Samuel where he was observably still alive, despite suffering, Defendant Stimans failed to render life-saving medical aid and continued pointing his firearm at Samuel.
126. By shooting and killing Samuel, Defendant Stimans deprived Samuel of due process and his conduct was arbitrary, egregious, and conscience shocking.
127. Defendant Stimans interfered with Plaintiff's constitutional liberty interest in familial association when he shot Samuel in the head twice and his conduct was the legal, direct, and proximate cause.

As a result of Defendant Stimans' conduct as alleged herein, Samuel was killed, and Plaintiffs suffered damages including deprivation of companionship and society, as well as pain, grief, sorrow, anguish, stress shock and mental suffering, loss of economic support, and loss of household services in an amount to be proven at trial.

128. Defendant Stimans' acts were willful, wanton, malicious, and oppressive, thereby justifying an award to Wendell Cautrell of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Wendell Cautrell, on his own behalf and on behalf of the wrongful death statutory beneficiaries and on behalf of the Estate of Samuel Cautrell, prays for relief against all named and unnamed Defendants as follows:

A. For all damages recoverable pursuant to A.R.S. § 12-611, et seq.;

B. For general damages, including but not limited to loss of love, affection, companionship and guidance resulting from the death of Samuel Cautrell, pain, grief, sorrow, anguish, stress, shock, and mental suffering to Plaintiffs for their loss of familial relations with their son;

C. For general damages, including Samuel Cautrell's pre-death pain and suffering and loss of life, pursuant to 42 U.S.C. § 1983;

D. For special damages, including but not limited to expenses arising from Samuel's death including but not limited expenses of medical treatment, burial, funeral, loss of economic support and loss of household services.

E. For compensatory damages including consequential, general and special damages;

F. For loss of life damages, also known as hedonic damages, as defined by federal common law and 42 U.S.C. § 1983;

G. For punitive and exemplary damages to 42 U.S.C. § 1988 and state law;

H. For all Attorney's fees and costs pursuant to 42 U.S.C. § 1983 and the Civil Rights Attorney's Fees Award Act of 1976, codified in 42 U.S.C §1988(b) and Equal Access to Justice Act, 28 USC 2412;

I. For taxable costs incurred and incurring, pursuant to A.R.S. § 12-341; and

J. For such other relief as the Court may deem proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all issues in this matter triable to a jury.

DATED this 1st day of December 2025.

**SLACK-MÉNDEZ LAW FIRM**

*/s/Charles J. Slack-Mendez*
Charles J. Slack-Mendez, Esq.
Breann Elizabeth Slack, Esq.
*Attorneys for Plaintiffs*